IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| FREDERICK BROOKS, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-13-1566 |
| MORTGAGE INVESTORS CORPORATION, *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Frederick Brooks sued Mortgage Investors Corporation
("MIC") and Amerigroup Mortgage Corporation ("AMC") (together
the "mortgage defendants"), and Linda L. Rose, in her capacity
as trustee of a deed of trust,[1] (collectively, the "defendants")
for fraud and violating the Maryland Consumer Protection Act
("MCPA")[2] in the Circuit Court for Wicomico County, Maryland.
ECF No. 2. The defendants removed to this Court. ECF No. 1.
Pending is the mortgage defendants' motion to dismiss for
failure to state a claim. ECF No. 14. No hearing is necessary.
Local Rule 105.6 (D. Md. 2011). For the following reasons, the
motion will be denied.

---

[1] Rose is allegedly an employee of Chicago Title Insurance
Company ("Chicago Title"). ECF No. 2 ¶ 6.

[2] Md. Code Ann., Com. Law § 13-301 *et seq.* (West 2012).

I.    Background[3]

Brooks is "functionally and legally vision impaired" and has "received a 100 percent disability rating from the United States Veterans Affairs Office." ECF No. 2 ¶ 1. On December 16, 2010, Brooks closed on a $255,000 loan for his home with an interest rate of 4.25% and monthly payments of $1,254.45. *Id.* ¶ 7. In May 2011, Brooks responded by telephone to a "mailed solicitation" from the mortgage defendants and was offered an opportunity over the phone to refinance his existing loan, thereby reducing his interest rate to 2.5% and lowering his monthly payment. *Id.* ¶ 8. He alleges that he was "promised" a fixed rate mortgage. *Id.* ¶ 25. "Based on the representations of that person, Brooks submitted an application to refinance his" loan, which "was received by a loan originator on behalf" of the mortgage defendants "on or about May 10, 2011." *Id.* ¶ 10.

"On or about June 29, 2011," an employee of the mortgage defendants came to Brooks's home to sign the closing documents on the loan. *Id.* ¶ 11. No one accompanied the employee. *Id.*

_____

[3] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

2

¶ 12. Because of Brooks's disability, he could not read the closing documents. *Id.* ¶ 2. The employee knew that Brooks "needed his assistance to know what was in the documents" because of his disability, and Brooks "relied on what was told to him and read to him" by the employee during the closing. *See id.* ¶ 14. At the closing, Brooks executed a deed of trust on which Rose is listed as Trustee. *See id.* ¶ 6.

Brooks alleges that he was never told that the new loan was an adjustable interest rate--rather than fixed rate--loan, that the loan had an interest rate of 3%--greater than the "promised" 2.5% rate, or that the interest rate could rise up to 8%. *Id.* ¶¶ 16, 18, 24. He alleges that he never signed an adjustable rate rider, although the document "bears a signature purporting to be" his. *Id.* ¶ 16. Similarly, he alleges that he never signed several other loan documents that all bear signatures purporting to be his.[4] *See id.* ¶ 17.

Brooks alleges that, although his new loan reduced his monthly payments by $133.37 per month, it also added $11,501.24 in settlement charges. *Id.* ¶¶ 23-24. Also, although his payments are lower now, the 3% interest rate is only guaranteed for 39 months. *Id.* ¶ 24. After that time, the interest rate

---

[4] Two of the closing documents allegedly bear signatures from a notary public, but Brooks alleges that no notary was present at the closing. ECF No. 2 ¶ 17. He also alleges that the HUD-1 form lists the place of settlement as Clearwater, Florida, but that he has never been to Clearwater. *Id.*

can increase to 5% "for the remaining 21 months," thereby increasing his original monthly payment by about $200. *Id.* After 5 years, the rate can rise up to 8%. *Id.* Brooks alleges that the mortgage defendants' statement that they would refinance his mortgage loan at a fixed interest rate of 2.5% was "knowingly false when made" and made "with the intent to deceive [Brooks] and to induce him to enter into a Variable Rate refinance program." *Id.* ¶ 26.

On April 29, 2013, Brooks filed suit in the Circuit Court for Wicomico County, Maryland alleging that the defendants (1) violated the MCPA; and (2) committed fraud. ECF No. 2. For both claims, Brooks seeks against all defendants: (1) a judgment declaring the deed of trust and note "null and void and rescinded;" (2) a refund of all monies paid; and (3) costs and attorneys' fees.[5] ECF No. 2 at 6-7. For the fraud count, Brooks also seeks $5 million in compensatory damages and $5 million in punitive damages against the mortgage defendants. *Id.* at 7.

On May 30, 2013, the defendants removed to this Court. ECF No. 1. Their notice of removal alleges that the Court has diversity jurisdiction over this action. *See id.* at 3-4. They allege that Brooks is a Maryland citizen, and that MIC and AMC are Ohio corporations with the same principal place of business in Florida. *Id.* at 3. They assert that, although Rose is also

---

[5] Brooks demands a jury trial. ECF No. 2 at 7.

4

a citizen of Maryland, her citizenship "can be ignored for diversity purposes because the Trustee is a nominal party and/or has been fraudulently joined." *Id.* Brooks did not oppose removal.

On June 14, 2013, the mortgage defendants moved to dismiss the complaint for failure to state a claim. ECF No. 14. On June 26, 2013, Brooks opposed the motion and requested leave to amend the complaint if his allegations were deemed insufficient. ECF No. 15. On July 15, 2013, the mortgage defendants replied. ECF No. 16.

II. Analysis

A. Jurisdiction

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending." But, if the action may only be removed to the District of Maryland based on diversity jurisdiction, it may not be removed if any properly joined and served defendant is a citizen of Maryland. § 1441(b)(2). The removing party has the burden of proving subject matter jurisdiction. *Md. Stadium Auth. v. Ellerbe Becket, Inc.,* 407 F.3d 255, 260 (4th Cir. 2005). Because removal raises "significant federalism concerns," the removal

5

statutes must be strictly construed, and all doubts must be resolved in favor of remanding the case to state court. *Id.*

Here, defendant Rose is a citizen of Maryland, which ordinarily would prevent removal under § 1441(a). *See* ECF No. 1 at 3; § 1441(b)(2). Also, because Brooks is a citizen of Maryland, ECF No. 1 at 3, complete diversity is lacking.[6] However, the doctrine of fraudulent joinder allows a federal court to "disregard, for jurisdiction purposes, the citizenship of certain [in-state] defendants, assume jurisdiction over a case, dismiss th[ose] defendants, and thereby retain jurisdiction." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999). As the party asserting fraudulent joinder, the defendants have the "heavy burden" to "demonstrate either outright fraud in the plaintiff's pleading . . . or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, . . . even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks and citation omitted). The Court must "resolve all doubts about the propriety of removal in favor of

---

[6] Complete diversity--"there is no plaintiff and no defendant who are citizens of the same State"--is required to establish diversity jurisdiction under 28 U.S.C. § 1332(a). *See Wisconsin Dep't of Corr. v. Schacht,* 524 U.S. 381, 388, 118 S. Ct. 2047, 2052, 141 L. Ed. 2d 364 (1998).

retained state court jurisdiction." *Id.* at 425 (internal quotation marks omitted).

That a complaint would not survive a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) does not mean that that defendant has been fraudulently joined; the standard is more favorable than the 12(b)(6) standard. *Id.* at 424. If there is any possibility of recovery, the defendant has not been fraudulently joined. *Id.* The Court may "consider the entire record," not only the complaint, to "determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctr's v. Grp. W. Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotations omitted). But, it may not act as a factfinder or "delv[e] too far into the merits in deciding a jurisdictional question." *Hartley,* 187 F.3d at 425.

The defendants do not allege any "outright fraud" in Brooks's complaint, but they do assert that Brooks cannot "establish a cause of action" against Rose, because there are no factual allegations in the complaint that relate to her, other than her identity as an employee of Chicago Title and trustee of the deed of trust. ECF No. 1 at 6. Brooks does not respond to this argument.

In Maryland, a deed of trust "grants and conveys the legal title to the property from the borrower (owner) to a trustee or trustees named in the instrument for the express purpose of

securing an indebtedness usually embodied in a deed of trust note." *In re Williams*, 277 B.R. 78, 81 (Bankr. D. Md. 2002); *see also Svrcek v. Rosenberg*, 203 Md. App. 705, 728-29, 40 A.3d 494, 508 *cert. denied,* 427 Md. 610, 50 A.3d 608 (2012) (discussing the operation of a deed of trust); ECF No. 14-2 at 7-8 (deed of trust).[7] The beneficiary of the deed of trust is the note holder, who may instruct the trustee to foreclose on the deed if the mortgagor defaults on the deed of trust and may substitute trustees if granted permission in the deed. *Williams*, 277 B.R. at 81; *Svrcek*, 203 Md. App. at 737, 40 A.3d at 513; ECF No. 14-2 at 15-16 (granting the lender the authority to substitute trustees and to instruct the trustee to sell the property upon default).

The trustee may not foreclose without instruction from the note holder--"[a]ll decisions concerning the institution of a foreclosure action as well as any settlement or restructuring in lieu of foreclosure are the sole province of the holder of the note." *Williams*, 277 B.R. at 82. Brooks cannot establish a cause of action against Rose because of the limited role of the deed of trust trustee, who holds no beneficial interest in the

---

[7] The defendants attached the deed of trust to their motion to dismiss. ECF No. 14-2 at 6-16. It may be considered for purposes of determining whether Rose was fraudulently joined. *See AIDS Counseling & Testing*, 903 F.2d at 1004.

8

property that the deed of trust secures,[8] and the lack of any factual allegations of wrongdoing by Rose in the complaint.[9] Accordingly, Rose has been fraudulently joined, and the claims against her will be dismissed. Without Rose, there is complete diversity between the parties, removal was proper, and the Court has jurisdiction.[10]

---

[8] *See Williams*, 277 B.R. at 81 (concluding that, in an action to avoid a lien created by a deed of trust, the trustee to a deed of trust is not a necessary or indispensable party, because the trustee's "only interest . . . affected by the Order Avoiding Lien is the existence of the deed of trust interest for the benefit of the Bank"); *In re Beckhart*, 09-07452-8-RDD, 2010 WL 1994813, at *1-*2 (Bankr. E.D.N.C. May 18, 2010) (concluding that trustee of deed of trust was not a necessary party in avoidance action, because "he does not have a beneficial interest in the real property beyond that of acting on behalf of the note holder").

[9] *See Sincere v. BAC Home Loans Servicing, LP*, 3:11-CV-00038, 2011 WL 6888671, at *7 (W.D. Va. Dec. 30, 2011) (dismissing trustee of deed of trust on basis of fraudulent joinder, in action requesting judgment declaring that mortgagee had no interest in the deed of trust, because the court could not "discern [any] factual allegations of wrongdoing by the trustee"); *Dempsey v. Transouth Mortgage Corp.*, 88 F. Supp. 2d 482, 484-85 (W.D.N.C. 1999) (dismissing substitute trustee of deed of trust under fraudulent joinder and nominal party principles, because "[t]he complaint contains no factual allegations against" the trustee beyond the trustee's citizenship).

[10] Similarly, those parties with "no personal stake in the outcome of the litigation" are nominal parties whose citizenship must be disregarded in determining if diversity jurisdiction exists. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S. Ct. 1779, 64 L.Ed.2d 425 (1980); *Dempsey*, 88 F. Supp. 2d at 484-85 (*citing Birnbaum v. SL & B Optical Centers, Inc.*, 905 F. Supp. 267, 271 (D. Md. 1995)). A party is considered nominal if there is no "legal possibility for predicting that the party could be found liable." *See Payne v. Bank of Am., N.A.*, 3:09-

B. Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

CV-00080, 2010 WL 546770, at *4 (W.D. Va. Feb. 11, 2010) (*citing Creed v. Virginia*, 596 F. Supp. 2d 930, 935 (E.D. Va. 2009) (internal quotations omitted)). Because Rose holds title to Brooks's property solely for others' benefit, and because there are no allegations of her misconduct, she is a nominal party and her citizenship may be disregarded. *See Dempsey*, 88 F. Supp. 2d at 484-85; *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 760-61 (E.D. Va. 2011) (concluding that trustee of deed of trust was a nominal party because trustee had "no substantive role" in the litigation).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

C. MCPA and Fraud Claims

1. Applicability of Rule 9(b)

The defendants contend that Brooks's claims, which sound in fraud, are "subject to the heightened pleading standard" of Federal Rule of Civil Procedure 9(b). ECF No. 14-1 at 5, 9. Brooks asserts that Rule 9(b) does not apply to his complaint, because the case was removed from state court, and his complaint meets the pleading standards of Maryland law. ECF No. 15 at 5-6.

Federal Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

11

other conditions of a person's mind may be alleged generally." "Rule 9(b)'s heightened pleading standard applies to state law fraud claims asserted in federal court," *U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 853 (D. Md. 2013) (*citing N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale,* 567 F.3d 8, 13 (1st Cir. 2009)), including "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud," *Baltimore Cnty. v. Cigna Healthcare*, 238 F. App'x 914, 925 (4th Cir. 2007) (internal quotations omitted).

Here, Brooks brings one count of common law fraud and one count alleging a violation of the MCPA. ECF No. 2. Because he alleges that the mortgage defendants made a misrepresentation to him, his MCPA claim "sounds in fraud" and thus is also subject to Rule 9(b)'s heightened pleading standard. *See, e.g., Currie v. Wells Fargo Bank, N.A.*, 8:12-CV-02461-AW, 2013 WL 2295695, at *5-*7 (D. Md. May 23, 2013); *Allen v. CitiMortgage, Inc.*, CIV. CCB-10-2740, 2011 WL 3425665, at *9 (D. Md. Aug. 4, 2011). Because Federal Rule of Civil Procedure 81(c)(1) provides that the federal "rules apply to a civil action after it is removed from state court," Rule 9(b), rather than Maryland law, governs the adequacy of Brooks's pleadings.[11]

---

[11] *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 775, 781 (4th Cir. 2013) (applying Rule 9(b)'s heightened pleading

12

2. Fraud

Under Maryland law, the elements of fraud are:

(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper,* 867 A.2d 276, 292 (Md. 2005). *"Ordinarily* fraud cannot be predicated on statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises . . . ." *Appel v. Hupfield,* 84 A.2d 94, 96 (Md. 1951) (emphasis added). Rather, a contract action is appropriate. *See id.*

However "the defendant's deliberate misrepresentation of his existing intentions, whe[n] the misrepresentation was material to the transaction giving rise to the alleged fraud, may form a basis for an action in fraud." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A.2d 1038, 1048 (Md. 1995). "[M]aking a promise as to a matter material to the

standards to fraud claim, and MCPA claims that sounded in fraud, after removal); *Lopez v. GMAC Mortgage Corp.,* C 07-3911 CW, 2007 WL 3232448, at *4 (N.D. Cal. Nov. 1, 2007) ("In a case that has been removed to federal court, the pleading requirements for a claim of fraud are analyzed under [Rule 9(b)]").

bargain with no intention to fulfill it is an actionable fraud."
*Gross v. Sussez Inc.,* 630 A.2d 1156, 1161-62 (Md. 1993).

As to the first element of fraud, the defendants assert
that the complaint fails to satisfy Rule 9(b), because it "fails
to identify, who, specifically, said what, to whom, and when."
ECF No. 14-1 at 9-10. Brooks asserts that the defendants
incorrectly characterize his pleadings as "conclusory" and they
are sufficient to state a claim under Rule 9(b). *See* ECF No. 15
at 7-8.

The Rule 9(b) heightened standard "requires a plaintiff to
plead 'with particularity the circumstances constituting
fraud,'" which "include 'the time, place, and contents of the
false representations, as well as the identity of the person
making the misrepresentation and what he obtained thereby.'"
*Spaulding*, 714 F.3d at 781 (*quoting* Rule 9(b); *Harrison v.
Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.
1999)). Here, considered in the light most favorable to Brooks,
he has alleged the content of the misrepresentation--the offer
of a fixed rate loan at a 2.5% interest rate; approximately when
the misrepresentation occurred--early May 2011; the identity of
the person who made the misrepresentation and where it occurred-
-the mortgage defendants' employee over the phone; and what the
mortgage defendants obtained thereby--his execution of a
variable rate loan. *See* ECF No. 2 ¶¶ 8, 10, 25. These

14

allegations sufficiently identify the circumstances under which the misrepresentation occurred to meet the Rule 9(b) standard.[12]

As to the second and third elements, Brooks alleged that the mortgage defendants' employee knew that his statement about the interest rate of the new loan was false, and that he made the misrepresentation "with the intent to deceive [Brooks] and to induce him to enter into a Variable Rate refinance program." ECF No. 2 ¶ 26. This allegation is sufficient under Rule 9(b), because the Rule allows "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *See Maheu v. Bank of Am., N.A.*, 12-CV-508, 2012 WL 1744536, at *4 (D. Md. May 14, 2012) (*quoting Harrison*, 176 F.3d at 784 (internal quotations omitted); Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")).

As to the fourth element, considering the allegations in the light most favorable to Brooks, Brooks alleged that he relied on the misrepresentation, because he decided to apply for the new loan "based on" being told that it had a 2.5% fixed

---

[12] *See, e.g.*, *Currie*, 2013 WL 2295695, at *7 (concluding that plaintiffs had stated a claim of fraud, because they "alleged both approximate and specific dates for many of the alleged misrepresentations, the content of many of the misrepresentations, [and] the identity of many of the persons making the misrepresentations (e.g., various Wells Fargo representatives, some of whom are named)").

interest rate. *See* ECF No. 2 ¶¶ 8-9, 25. The defendants assert
that he fails to allege *reasonable* reliance, because "[e]very
document [Brooks] was given concerning the loans . . . clearly
state that the loan has an adjustable rate feature," making his
reliance "upon a putative oral statement" unreasonable. ECF No.
14-1 at 10. Although the terms of the deed of trust apparently
revealed the loan's adjustable rate feature,[13] Brooks alleged
that he was relying on the defendants' employee to inform him of
the terms of the deed at the closing because he is vision
impaired, and the employee knew of this disability. ECF No. 2
¶¶ 2, 14; *cf. Goldstein v. Miles*, 159 Md. App. 403, 437, 859
A.2d 313, 333 (2004) ("[I]n determining whether the reliance was
reasonable, the background and experience of the party that
relied upon the representation is relevant."). Also, Brooks
alleges that he did not sign several of the other documents that
disclosed the loan's adjustable rate feature and purport to bear
his signature. ECF No. 2 ¶¶ 16-17. Accordingly, Brooks has
alleged reasonable reliance on the oral representations of the
defendants' employee over the phone in May 2011.[14]

---

[13] *See, e.g.*, ECF No. 2 ¶¶ 11, 15, 18, 28 (discussing the terms
of the new loan and noting that he was "induce[d] . . . to enter
into a Variable Rate refinance program").

[14] *Cf. Parker v. Columbia Bank*, 91 Md. App. 346, 364, 604 A.2d
521, 529-530 & n.10 (1992) (finding that plaintiffs had stated a
claim of fraud even though one of the alleged oral
misrepresentations contradicted the express terms of the

16

Finally, as to element five, Brooks has alleged that his reliance on the mortgage defendants' employee's misrepresentations caused him to execute the new loan which added $11,501.24 in settlement charges to his prior balance. ECF No. ¶¶ 10, 23-24. He also alleges that, if the interest rate does rise above the rate of his original loan, Brooks's monthly payment will increase, "eliminating any 'benefit' from the refinance." *See id.* ¶ 24. Thus, Brooks has alleged "compensable injury" from the misrepresentation. *Hoffman,* 867 A.2d at 292. The defendants' motion to dismiss Brooks's fraud claim will be denied.

---

contract); *Benjamin v. Erk*, 138 Md. App. 459, 482, 771 A.2d 1106, 1119 (2001) (finding that, although individuals who sign documents generally have a legal obligation to read them first, the general rule does not always bar a fraud claim based on oral misrepresentations that contradict written contract terms depending on the reasonableness of the plaintiff's excuse for not reading); *but see Creamer v. Helferstay*, 294 Md. 107, 120, 448 A.2d 332, 338 (1982) (finding that an oral misrepresentation that contradicted a written contract term could not form a basis for a fraud claim, *because the defendant's "[mis]representation was honest and unintentional"*) (emphasis added).

### 3. MCPA Claim[15]

To bring an action under the MCPA, Brooks must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [him] actual injury."[16] *Stewart v. Bierman,* 859 F. Supp. 2d 754, 768 (D. Md. 2012) (*citing Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 916 A.2d 257, 277 (2007)). The MCPA must be "liberally construed in order to achieve its consumer protection objectives." *Marchese v. JPMorgan Chase*

---

[15] The defendants contend that Brooks's opposition "only addresses the issue of whether his allegations of fraud . . . meet the heightened pleading standards of Rule 9(b)," thereby conceding "that he has failed to state a claim under the CPA." *See* ECF No. 16 at 6. However, as both of Brooks's claims are based on the same allegations of fraudulent conduct, which Brooks discusses in his opposition, and the defendants repeat many of the same arguments in opposing both claims, this argument is unavailing. *See* ECF Nos. 2 at 5-7, 15 at 7-9, 14-1 at 4-6, 9-10.

[16] The defendants assert, without citation, that Brooks's failure to identify the provision of the MCPA under which he brings suit is fatal to his claim. *See* ECF No. 14-1 at 6. However, Brooks's allegations were apparently sufficient to give the defendants notice that he brought a fraud-based claim under the MCPA, to defend against his claim on that basis, and to locate loan documents relevant to the case. *See id.* at 4; ECF No. 14-2. Because the complaint gives the defendants sufficient notice of the particulars they will have to defend against at trial, the failure to identify the specific provision of the MCPA does not warrant dismissal. *Cf. Harrison,* 176 F.3d at 784 ("A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.").

18

*Bank, N.A.*, 917 F. Supp. 2d 452, 464-65 (D. Md. 2013) (*citing State v. Cottman Transmissions Sys., Inc.,* 86 Md.App. 714, 587 A.2d 1190, 1204 (Md. Ct. Spec. App. 1991)).

For the reasons discussed above, Brooks has sufficiently alleged the circumstances surrounding the misrepresentation and his reasonable reliance on the misrepresentation. *See supra* Section II.C.2; *Currie,* 2013 WL 2295695, at *7.

The defendants contend that Brooks has failed "to allege that any harm occurred as a result of any purported CPA violations." ECF No. 14-1 at 6. For example, they argue that, although Brooks "complains generally about the settlement charges, there are no allegations that the charges were not reasonable or appropriate for the New Loan." *Id.* at 6-7. Even if the settlement charges would ordinarily be reasonable for new loans, Brooks alleges that they resulted from his reliance on the mortgage defendants' misrepresentation. *See* ECF No. 2 ¶¶ 24-26. This is sufficient to establish actual injury under the MCPA.[17] *See Lloyd,* 397 Md. at 143, 916 A.2d at 277 ("[T]he

_____

[17] The defendants assert that Brooks's request for rescission of the deed of trust would result in unjust enrichment to him, because they already paid off his original loan, and apparently prevents Brooks from stating a claim of actual injury. *See* ECF No. 14-1 at 8. They also argue that his allegations of injury from the operation of the adjustable rate feature of his loan are implausible, especially because it is unlikely that his interest rate will rise above the level of his original loan. *See id.* However, that Brooks may assert more injury than is compensable under the MCPA, and request more relief than he will

19

consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation."). The defendants' motion to dismiss will be denied.[18]

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be denied, and the claims against defendant Rose will be dismissed.

_____
Date  1/8/14

_____
William D. Quarles, Jr.
United States District Judge

---

be entitled to if he proves a violation, does not require dismissal of his MCPA claim when he has otherwise adequately stated a claim for relief. *Cf. Twombly*, 550 U.S. at 556, 563 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. . . . [O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.").

[18] Because Brooks only requested leave to amend the complaint if the Court determined that his allegations were insufficient to survive the defendants' motion to dismiss, *see* ECF No. 15 at 8, the Court will not grant leave to amend at this time.